May I please the Court? Good morning, Your Honors. Mike Esser, Kirkland & Ellis, LLP, representing Petitioner Moiseev pro bono in this petition for review. I plan to reserve two minutes, if I remember to do that. Your Honors, Ms. Moiseev is a transgendered woman who has suffered extreme trauma and persecution on account of her sexual identity. This trauma exacerbated severe mental conditions from which Ms. Moiseev has suffered from a very early age. Ms. Moiseev originally applied for asylum withholding in Kat on account of her Jewish faith. She did not seek asylum based on her transgender identity because she was afraid to admit her experiences in Russia as a transgender woman to anyone, including her own attorney at the time. Following the departure of her attorney, an IJ denied her proceeding pro se, and the BIA in 2004 dismissed Ms. Moiseev's pro se appeal. In 2011, Ms. Moiseev hired an attorney and was finally able to reveal and discuss her experiences and persecution in Russia on account of her transgender status. Ms. Moiseev then filed a motion to reopen, the first argument in which was for equitable tolling of the 90-day on account of her transgender status. In support of that motion, Ms. Moiseev submitted a wealth of new evidence, a new declaration describing her prior trauma, which included electrocution by anti-LGBT groups and threats from the police in Russia, as well as her history of mental illness. Let me, there's some things that concern me about this because it's so much later, and I'd just like you to sort of incorporate that in, because if the court were to give relief to your client, and I'm not saying, I'm just speaking hypothetically at this point because we obviously haven't even talked about the case, so there's no, this doesn't just apply, you know, the things that are said don't just apply to your client. They apply to a broader base, and some of the cases that you're relying on involve individuals who are delusional or mentally incompetent, and of course, just because someone is transgender does not mean that they are delusional or incompetent, and I don't think that you would want to argue that proposition, you know, I mean, I don't think that furthers the position that you're making that Ms. Moisey's gender dysphoria accuses her belated filing. I mean, if you end up conflating or making gender dysphoria equal to mental illness and incompetence, then everyone that has gender dysphoria is, you know, therefore that they can't do anything, they can't file anything, and the record here belies that your client couldn't do anything. Thank you, Judge Callahan. On that point, I would note that the psychological reports and the medical records that were submitted with the motion to reopen do detail schizophrenia, post-traumatic stress disorder, as well as other mental illnesses that were only exacerbated by the persecution Ms. Moisey suffered on account of her transgender status. So, as with every equitable tolling case, cases are addressed on a case-by-case basis, and we are certainly not asking that every transgender person be entitled to equitable tolling of a certain period of time. But in this circumstance, certainly the — Well, it seems that you want equitable tolling until she comes out, as it were, even though the facts in the case certainly indicate that she was dressing — you know, whether she was out as a transgender, she did suffer certain things when she was in Russia, and she continued — she got arrested, she continued to dress in, you know, in women's clothing. And it appeared that, you know, if we look at what — if we're considering the standard of review, that they could think that, I mean, she had already come out in a country where there was — you know, where she would be persecuted. And then I think the record also says here in — since 2000, she's been presenting herself as a woman. That's correct, Your Honor. And on that point, I would distinguish between — I believe you're referring to the fact that in 2000, Ms. Moiseev was divorced from her then-wife when her wife at the time learned that Ms. Moiseev was, in fact, living as a woman. On that point, I'd note that we are asking for equitable tolling until the period when Ms. Moiseev was, as a result of her mental illness and persecution, able to detail that problem application, not the fact that she was — Well, it seems like, though, you're also — but you're trying to somehow put that at the time when the person's willing to come out. And that doesn't seem to be a terribly manageable rule in light of what the case law is otherwise, because the other cases that you're citing are talking basically where people are mentally incompetent to either tell someone what happened or — you know, or they're in such great fear of that time. And on that point, Your Honor, I'd point to the psychologist's report on AR-73 that detailed that Ms. Moiseev endorsed avoidance of painful memories or thoughts and attempts to avoid any stimuli representative of past painful experiences. And also Ms. Moiseev's own declaration where she said, until recently, I had never told anyone about my story as a transgender woman in Russia because I had been too afraid to share it with anyone. So it's not just that she was afraid to share that she was a transgender woman. It's that she was so traumatized by this past persecution that she, when combined with her mental illnesses, was unable to actually detail her persecution, the fact that she had been committed and attempted to be cured of her homosexuality with electrocution, the fact that she had been kidnapped and electrocuted in a chair. Those were painful memories that she was not able to talk about until such time as she did receive counsel in 2011 and filed a motion to reopen. So on that point, I would not say it's just that she was unable to come out to anyone. Certainly, the record indicates she was able to do that in 2000. Your Honors, we've cited a case named Stol v. Runyon. Judge Reinhardt, it's your opinion. In Stol, traumatic sexual abuse has triggered psychological conditions that prevented Ms. Stol from pursuing a Title VII claim. Ms. Stol suffered from severe depression, anxiety, and somatic form pain disorder as a result of sexual assaults she suffered at a postal agency. Here, Ms. Moiseev suffered from severe depression, anxiety, post traumatic stress disorder, which was exacerbated by her persecution in Russia. Both women attempted suicide, Ms. Stol after she was sexually assaulted, and Ms. Moiseev when faced with a prospect of returning to persecution in Russia. This Court held in Stol that if ever equity demanded tolling a statute of limitations, it does so here. The same should be true here. Ms. Moiseev's claim for asylum should not be extinguished based on the same injustices that asylum was designed to In this Court's en banc decision in Socop-Gonzalez, that's 272 F. 3rd 1176, the Court reaffirmed that equitable tolling does apply to the 90-day deadline for motions to reopen, and the Court cited Stol approvingly as an example of where plaintiffs' mental incapacity warranted equitable tolling. That's at Penn site 1176. Was there ever mediation in this case? Was there ever mediation? I don't believe so. There was some mention here, any of the, apparently your client amassed a record during the period, committed a few crimes along the way. Now I don't know, are any of these crimes disqualifying? They are not. As we've detailed in our brief, none had a period of incarceration over one year, and so they are not disqualifying. On Stol, Your Honors, the government raises a red herring by arguing that, unlike here, the party that opposed equitable tolling in Stol, the postal agency, was the party that actually caused the mental defect. But equitable tolling applies in two distinct circumstances, where a defendant's wrongful conduct prevented a plaintiff from asserting claims, or, like here, where extraordinary circumstances beyond plaintiff's control prevented her from presenting claims. Stol addressed both the former and the latter. Her mental conditions were considered an extraordinary circumstance. So how long of tolling do you need? The motion to reopen was filed in 2011. The PIA's final decision was in 2004. It's a period of roughly seven years. All right. And how long of tolling was there in Stol? Stol included a period of tolling, I believe it was below three years. On that point, Your Honor, this Court has held in Mejia-Hernandez that a petitioner was entitled to equitable tolling of the 90-day period for motions to reopen, in that case of up to seven years and one month, in that case because of an effective attorney. And here, again, I'd note that when the BIA originally denied Ms. Moiseev's application for asylum and appeal in 2004, she was pro se. And this Court has held that procedural requirements should be more liberally construed for pro se litigants. Further, Ms. Moiseev's delay is consistent with the severity of her mental disorders and deep trauma. As detailed in the third-party declaration from the National Immigration Justice, another piece of evidence that was submitted with the motion to reopen, immigrants in the LGBT community often face particularly difficult obstacles in bringing forth their experiences and persecution on account of their LGBT status. Ms. Moiseev's declaration, as well as a psychologist's report, also detail the severity of her mental disorders that prevented her from filing on time. As to the motion to reopen standard itself, moving to BIA. What does the record show that she was doing from 2004 to 2011? From 2004 to a period of 2009, she was employed as a taxi driver. In 2009, she was arrested, and shortly after being released on the charges at the time, she was picked up by Immigrations and Customs Enforcement and had been detained from 2009 until 2011. In that period is where we have the bulk of the Immigrations and Customs Enforcement agency did keep on her mental condition, and at that time, she did have several suicide attempts on account of her mental conditions that prevented them from removing her. Your Honors, on the second element of the motion to reopen standard, whether or not this evidence could have been presented originally, the government takes issue with the Pondock-Herneas. But in that case, there was no new evidence, just new argument based on previously submitted evidence. Here, Ms. Moiseev has submitted a wealth of new evidence, a new declaration, psychological report, third-party declaration, medical records, and new country conditions. And Ms. Moiseev was unable to present this evidence because of her deep psychological trauma. Also, this Court has held, when the BIA dismisses an alien's claims with conclusory statements, this Court may conclude that the BIA has abused its discretion. Here, the BIA's two-page order devoted but one paragraph to one piece of the new evidence that Ms. Moiseev submitted with the motion to reopen, the psychological report. As to that piece of evidence, the BIA concluded it does not meaningfully address the issue of whether the Respondent's mental health prevented her from presenting her claims below. On that point, we disagree. The report at AR-73 detailed that Ms. Moiseev, quote, endorsed avoidance of painful memories, as I stated previously. So it does go to the fact that she was unable to raise these issues before. But in addition, the BIA's order does not address the other pieces of evidence. The BIA's order does not even address Ms. Moiseev's of her persecution. You have two minutes. Thank you, Your Honor. The BIA also wholly ignores the country conditions report, and notably the third-party declaration, as well as the medical records. I'd reserve the balance of my time. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, Margo Carter for the United States Attorney General. May I ask you one question here? It bothers me in a number of cases. Are you seriously planning to deport this person to Russia? Your Honor, the petitioner has a history of crime in the United States. He's had five arrests and two fraud convictions. Could you just say yes or no? Yes. He could seek deferred action. Is there a treaty with Russia? Is there a treaty with Russia regarding... Deportation? Is there some arrangement with Russia? Do they accept... We can remove people to Russia, yes, Your Honor. And that is going on these days? We are deporting people to Russia? Yes, I believe so, Your Honor. I think that... I mean, we have some deportation cases where nothing happens. The countries won't take people. I think that there are certain cases where, for whatever reason, the government of the home country won't accept somebody back, but I do know we're able to... Do you think the Russians will be happy to have this person back? I don't know, and it's not really an issue in this case. It is an issue when we keep spending half our time on cases and then find out the government has no plan on deporting them and couldn't deport them. So it is relevant for our purposes whether we should be spending as much of our time as we are. I mean, if the government seriously intends to deport somebody, then it should be our job to determine the legal issues. We didn't... Then I would hope it wouldn't be asking us to hear these cases. Well, in fact, we did attempt to deport the petitioner in this case in 2010, and he attempted to commit suicide in response. We were in the process of trying to remove the petitioner in this case. So certainly, in this case... And you expect that the Russians would be happy to accept this individual? I have no information on whether the Russians would or would not be happy to accept the... Well, okay, but if someone commits suicide, then... I mean, tries to commit suicide. I'm sorry. Obviously, if they commit suicide, it's over. But if they try to commit suicide, then you can't deport them? No, I think in this particular case... I mean, because here he... Ms. Moisey is out, right, now? Yes. Okay. So why is that? I think there's only a limited period during which somebody can be detained, and this court issued a stay of removal over our objection in this case. Okay. And this case has been pending since 2012. So Ms. Moisey was released after the stay? Yes. Okay. In any event, there was no abuse of discretion, and that really is the only issue in this case. The board did not abuse its discretion in denying a motion to reopen that was seven years untimely. It's undisputed in this case that the motion to reopen was untimely filed. It's also undisputed in this case that none of the recognized regulatory exceptions to that 90-day deadline apply in this case. This isn't a changed country conditions case. It isn't an absentia case or lack of notice case. It isn't any of the exceptions that are recognized by the regulations. In fact, the petitioner doesn't argue any of those exceptions and instead wishes to import the mental illness and trauma exception from the one-year bar statute for asylum, which hasn't been applied historically to the 90-day reopening deadline for motions to reopen. Under such circumstances where the statutory framework hasn't been applied in motion to reopen cases, the board's decision can't be said to be an abuse of statute and within the presidential decisions of the board and this court. In that respect, the board's decision was not an abuse of discretion. Well, okay. Let's assume that I think I went over with counsel a lot of the issues. I wanted to have the answers on those. I'm just curious. This would not be something that if a person, the petitioner has a number of sympathetic factors that don't – I mean, certainly on their face, they don't seem to be made up, and it doesn't seem to have conveniently arisen in that it was occurring back in Russia, and mediation is just out of the question on this? I don't know that it would be out of the question, Your Honor, but given the petitioner's fraud convictions in this case, he certainly would be a priority for removal, and certainly that was the intent of DHS, was to remove the petitioner in this case. It's also worth noting that the board didn't abuse its discretion in concluding that the petitioner failed to connect the mental illness that he alleged with the ability to make a timely filing in this case, and the petitioner did cite Stoll v. Runyon, which is distinguishable for all the reasons we set out in our brief. The petitioner in the reply brief and in oral argument has suggested that our argument was a red herring insofar as we talked about how the postal service in Stoll v. Runyon had actually caused the mental trauma, but there was a second part to our argument as well, which was that the petitioner in Stoll v. Runyon suffered from far more severe trauma as a result of the office circumstances that led to the sexual harassment complaint. The petitioner in this case held down a job, was able to represent himself in immigration court, and was able to do a number of other things that indicated that the petitioner was capable of engaging in litigation, and yet, despite all that, did not make a timely filing in this case. It's also worth noting that the petitioner's immigration case was pending over a span of approximately 20 years, beginning in 1992, and during that time, the petitioner was living openly as a transgendered individual and represented by counsel from 1992 to 1994, and the petitioner was, again, represented by counsel in part, and also living openly as a transgendered individual from 2000 to 2008. So it's 10 of the 20 years that the petitioner was in the United States that the petitioner was living openly as a transgendered individual. And so to the extent that, even if this case were equitably told, the petitioner has also failed to meet the most basic requirement of a motion to reopen, which is to show that the evidence was not available previously, and the petitioner in this case can't show that the evidence was not available when the petitioner has acknowledged that the awareness of this transgender identity existed as far back as the petitioner's time in Russia, and it cannot be said to not be available in that sense. Moreover, the board didn't abuse its discretion insofar as at least one reason that the petitioner presented for failing to file this asylum claim in 1992 or at some point earlier regarding the transgendered identity was because the petitioner had chosen to proceed on this religious persecution claim, and the petitioner, in effect, made a strategic decision that the religious persecution claim was more likely to succeed and proceeded on that instead of the transgendered identity claim. And for that reason, it was not an equitably told the motion to reopen deadline for a petitioner who essentially has sat on his rights here. In sum, the petitioner in this case has not shown... I guess the argument that would be made there is that I think regularly there are instances where when people serially come up with new... If one reason for asylum doesn't work, then, oh, but then I have this one, and then, well, why didn't you raise that one? Here, I think the argument is slightly more nuanced in that because of the argument that they're... The fear of telling people of these things in terms of either fear of actually even telling people in the United States. The United States probably is much more... People would be more likely to disclose at this point than they would have been back in 2000. That may be true, Your Honor, although certainly back in 1990, the board was granting asylum claims on the basis of gender identity and homosexuality. And more recently, I think moreover in this particular case, even though there might be more than one way to construe the record, the issue is really whether the board abused its discretion in reaching the conclusion that it did. And in the present case, it's difficult to conclude that the board abused its discretion when it followed its own regulations. It did nothing that was arbitrary, irrational, or contrary to law when it found support in the record for the existing law of this court and the board in reaching those conclusions. In some... I should also add, actually, to address the petitioner's point regarding Stoll versus Runyon, just to emphasize that the petitioner who is seeking review in that case suffered from far more severe, I guess, mental illness issues than the petitioner in the present case. The petitioner in Stoll versus Runyon was unable to read, unable to work, unable to communicate with her own attorneys because she was afraid of men. There was no such impediment to making a legal filing in this case as there was in Stoll versus Runyon. In sum, the petitioner has not demonstrated that the board abused its discretion and that the board did not act arbitrarily, irrationally, or in a manner contrary to law in reaching its decision that the petitioner was not entitled to equitable tolling in this case and that the petitioner failed to submit evidence that was not previously available. If the court has nothing further. Thank you. Thank you, Your Honor. Your Honor, two brief points on rebuttal. Well, you've made a compelling argument of the facts on your side, but when you deal with abuse of discretion, tell me why, what the respondent just said. Correct. And on that point, the issue is whether the board abused its discretion. And I must say on that point, I think the record is clear. In Boston v. Gonzalez, 423 F. 3rd, 977, this court noted that it is long held that credibility determinations on motions to reopen are inappropriate. The BIA notes that in 2003, the I.J. found Ms. Moiseev's credibility, found Ms. Moiseev's credibility credible. It's clear that the BIA's two-page decision discounted the wealth of evidence submitted with the motion to reopen, including petitioner's new declaration identifying herself as transgender, because at core, it did not believe her to be a transgendered woman. Indeed, despite Ms. Moiseev's declaration identifying herself as female, as well as the motion to reopen identifying herself as female, the BIA, which on the declaration the BIA was required to treat as true, the BIA and the government to this day continue to refer to Ms. Moiseev as male. In Boston, this Court held that even labeling an affidavit, quote, self-serving, which the BIA did in that case, is an attack on the credibility of the affiant constituting an abuse of discretion on a motion to reopen. The BIA has gone much Other than the fact that they would refer to your client as a male, what is it in their decision that you believe, causes you to believe it's based on a credibility assessment? It's the footnote in which, Your Honor, they did note, it's at AR3, the BIA notes that the IJ found Ms. Moiseev's testimony credible, but then the BIA includes the footnote calling Ms. Moiseev's credibility into doubt, noting that the IJ stated she, quote, seems clearly able to change her story to suit her own need, and I'm asserting female pronouns there because they did refer to her as him at the time. Well, I guess from the standpoint, too, that we do get a lot of cases, and I'm sure when you were clerking, you saw them as well, where people, when one thing doesn't work, then they come up with another, and then they keep coming up with, you know, things that were all, so, is because your client's position now, based on being transgender, is someone not able to look at that and say, well, before it was that you were Jewish? Your Honor, again on that point, and I must say that Kirkland & Ellis took this case pro bono because of its relationship with the LGBT nonprofits in San Francisco. The issue, again, is not whether she was able to reveal to her wife in 2000 that she was transgender, but whether she was prevented, as the wealth of psychological evidence demonstrates, from detailing her persecution in Russia on account of this protected ground, and she clearly had a lot of difficulty with that and was prevented from doing that until she finally did so with counsel in 2011. If the Court has no further questions, I'd ask you to grant the petition for review. Thank you. I would also like to thank both of you for your helpful argument in this matter, and as well, the Court is always appreciative of attorneys willing to take pro bono cases because it really pinpoints the arguments for it, and it's helpful for us in resolving these cases, and we know that it's a lot of work, so thank you. Thank you both for your helpful argument.
judges: Reinhardt, Noonan, Callahan